IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

CARL FINLEY                                                                                          PLAINTIFF

v.                                         NO. 3:05CV00132 HDY

JO ANNE B. BARNHART,                                                                          DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

The record reflects that in November of 2002, plaintiff Carl Finley ("Finley") filed applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration. He next requested, and received, a de novo administrative hearing before an Administrative Law Judge ("ALJ"). In February of 2005, the ALJ issued a ruling adverse to Finley. He then appealed that ruling to the Appeals Council. In June of 2005, the Appeals Council affirmed the ruling of the ALJ. That ruling therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). In June of 2005, Finley commenced the proceeding at bar in which he challenged the final decision of the Commissioner.

The sole inquiry for the Court is whether the Commissioner's findings are supported by substantial evidence on the record as a whole. See Prosch v. Apfel, 201 F.3d 1010 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." See Id. at 1012. The Court may not reverse the decision of the Commission merely because the evidence supports a different conclusion. See Id.

In determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole, it is helpful to identify those findings. The Commissioner made findings pursuant to the five step sequential evaluation process.[1] At step one, the Commissioner found that Finley "has not engaged in substantial gainful activity since the onset date [of December 2, 2001]." See Transcript at 13, 81, and 185. The Commissioner did note, however, that Finley testified to the following: "he went back to work in February [of] 2002 on a part time basis and [in] July [of] 2003 on a full time basis and was fired [in] January [of] 2005 ..." See Transcript at 13. Finley additionally testified that he is "now going to vocational technical school studying machine shop." See Transcript at 13. The Commissioner found the following with regard to Finley's testimony of his work after the onset date:

---

[1] The five steps involve determining the following: "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or is comparable to, a listed impairment; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work." See Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) [citing Bowen v. Yuckert, 482 U.S. 137 (1987)].

> In this case, the claimant's work activity tends to support a much higher residual functional capacity than an individual who is disabled. There is the issue of whether this work activity was of sufficient amount to be deemed [substantial gainful activity]. However, the issue [of] whether or not the claimant's work after his alleged onset date was at the [substantial gainful activity] level is rendered moot by a finding of not disabled below.

See Transcript at 13-14. At step two, the Commissioner found the following:

> ... the claimant has hypertension; headaches; history of motor vehicle accident (post-status compression fracture of T/8 and grade I cerebral concussion); early degenerative changes, osteopytes formation anterior and posterior plates of C/4-5; and history of a second motor vehicle accident (post-operative fracture of the mid shaft with comminution of the right femur/ORIF with IM interlocking nail) and chronic pain ...

See Transcript at 14. At step three, the Commissioner found that Finley has a severe impairment but no evidence of "any impairment or combination of impairments that meets or equals the level of severity [of a listed impairment]." See Transcript at 14. The Commissioner then proceeded to step four; at that step, the Commissioner found that Finley retains the residual functional capacity for "a narrow range of the light exertional level in jobs which do not require constant repetitive bending or stooping and pushing or pulling." See Transcript at 17. Because Finley's past work as a guard, design drafter, or machine operator does not require the performance of work-related activities precluded by his limitations, the Commissioner found that Finley could return to his past work. Given the foregoing findings, the Commissioner concluded that Finley was not disabled within the meaning of the Act.

Are the Commissioner's findings supported by substantial evidence on the record as a whole? Finley thinks not. He maintains that the Commissioner's findings are not so supported for the following reason: "[t]he [Commissioner's] determination that Finley can perform light work is not supported by substantial evidence on the record as a whole." See Document 10 at 9. He builds his assertion upon the following:

> The medical evidence does not support the [Commissioner's] decision. Finley was injured in an automobile accident in March 1992. He suffered a spinal compression fracture at T-8 and received a grade I concussion. ... He was injured in a second accident in August 1997, after which [he] underwent surgical repair and insertion of hardware for a broken right thigh. ... X-rays taken at that time revealed early degenerative changes and osteophyte formation of the anterior and posterior plates of C-4 and C-5. An EKG also showed a left atrial abnormality. ... The doctor who examined Finley in February 2003 noted that Finley had reinjured his back by falling into a ditch while hunting. He was having pain in his right leg and also complained of occasional chest pain. Finley walked with a cane and dragged his right leg. X-rays revealed an old compound fracture at T-11 with degenerative changes. The doctor diagnosed Finley as suffering from (1) pain in the right femur due to post fracture and an internal pin, and (2) a compound fracture at T-11 with degenerative changes to the thoracic spine. ... Finley also has been treated on numerous occasions for hypertension and periodically for headaches.
>
> The only doctor to comment on Finley's work-related restrictions during the relevant time for which Finley seeks a closed period of disability was Dr. Redd, a consultative physician employed by the state disability determination agency. Dr. Redd limited Finley to performing only sedentary work. Specifically, he limited him to lifting up to ten pounds frequently and less than ten pounds occasionally, standing and/or walking only two hour[s] in an eight-hour workday, and sitting about six hours in an eight-hour workday. He also limited Finley's ability to push or pull pedals with his right leg. ... Dr. Redd's findings do not support the [Commissioner's] determination the Finley can perform light work.

> There is no medical evidence in the record which contradicts Dr. Redd's opinion regarding Finley's work restrictions. ... In <u>Lauer v. Apfel</u>, 245 F.3d 700, 704-05 (8th Cir. 2001), the Eighth Circuit made it clear that while [the Commissioner] is not limited to considering medical evidence in evaluating a claimant's residual functional capacity, there must be "some medical evidence" that supports the ... [residual functional capacity] assessment before the [Commissioner's] decision can be affirmed. ... In this case, there is none. ...
>
> The [Commissioner] should have contacted Finley's doctors for their opinions regarding his work-related limitations during the relevant period. While Finley's condition, by his own testimony, improved sufficiently for him to return to work in mid-2003, the record does not contain any opinion from Finley's doctors regarding his work-related limitations prior to that period. ... The [Commissioner] in the present case rejected even the opinion of the state DDS doctor that Finley could perform only sedentary work and decided that Finley can perform light work without any supporting medical evidence. Given the aggravation of Finley's prior injuries, the [Commissioner] was obligated to contact his doctors for "additional evidence or clarification," ... and "for an assessment of 'how the impairments limited [Finley's] ability to engage in work-related activities." ...

<u>See</u> Document 10 at 9-12.

The Commissioner advances several assertions in response. The Commissioner's primary assertion is that regardless of whether Finley can perform light work, his success on appeal is foreclosed because he can perform sedentary work and he has past sedentary work as a design drafter.

Is there merit to the Commissioner's assertion that Finley's success on appeal is foreclosed because he can perform sedentary work and he has past sedentary work as a design drafter? The Court thinks so.

The Commissioner found that Finley retains the residual functional capacity for "a narrow range of the light exertional level in jobs which do not require constant repetitive bending or stooping and pushing or pulling." See Transcript at 17. Finley challenges that finding and relies heavily upon the findings made by Dr. Robert M. Redd ("Redd"), a "non-examining DDS physician." See Document 10 at 5.[2] Finley does not dispute, however, that he retains the residual functional capacity to perform sedentary work. Redd's findings, which Finley so heavily relies upon, clearly fit within the definition of sedentary work codified at 20 C.F.R. 404.1567(a).[3]

Finley not only retains the residual functional capacity to perform sedentary work, he has past relevant work of a sedentary nature. He indicated in his initial filing that he has worked as a design drafter, see Transcript at 88, and he so testified during the administrative hearing, see Transcript at 201. A vocational expert testified during the administrative hearing that design drafter was "skilled work, sedentary exertional level." See Transcript at 211.

---

[2] Redd opined that Finley could occasionally lift/carry ten pounds, could frequently lift/carry less than ten pounds, could stand and/or walk for two hours in a typical workday, and could sit, with normal breaks, for six hours in a typical workday. See Transcript at 138.

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

Given the foregoing, the Court accepts that Finley retains the residual functional capacity to perform sedentary work only.  Because he has past work of a sedentary nature, i.e., as a design drafter, he can perform his past work and is therefore not disabled within the meaning of the Act.

Admittedly, the foregoing analysis was not engaged in by the Commissioner. Nevertheless, it was, in effect, harmless error for the Commissioner to have found that Finley was capable of performing jobs in the narrow range of the light exertional level. It is abundantly clear that he can return to his past work and, by definition, he is not disabled within the meaning of the Act.

In conclusion, the Court finds that there is substantial evidence on the record as a whole to support the Commissioner's conclusion that Finley is not disabled within the meaning of the Act.  He retains the residual functional capacity to perform sedentary work, and he has past sedentary work.  Although the Commissioner found that Finley was capable of performing jobs in the narrow range of the light exertional level, that finding was, in effect, harmless error.  Judgment will be entered for the Commissioner.

IT IS SO ORDERED this __14__ day of August, 2006.

_____
UNITED STATES MAGISTRATE JUDGE